

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS

ATTORNEY GENERAL

Honorable H. A. Jamison, Commissioner
Department of Banking
Austin 14, Texas

Dear Sir:

Opinion No. O-6057
Re: Annulment of certificate
of authority of Lone Star
Building and Loan Associa-
tion, Houston, Texas, and
a related matter.

          Your letter of May 26, 1944, requesting the opinion
of this department regarding the matters stated therein is as
follows:

          "Our Mr. A. E. Knippa, Building and Loan
Supervisor, has conferred on various occasions with
your Mr. Bassett in connection with the condition
of the Lone Star Building and Loan Association,
Houston, Texas and steps that should be taken look-
ing toward the appointment of a receiver thereof for
the purpose of winding up its affairs.

          "Under date of December 7, 1943 the then Bank-
ing Commissioner transmitted to you the original
examination report which was and is the basis for our
determination of an insolvent condition, along with
various other files that related to the subject matter.
The last paragraph of our transmittal letter stated:

          "'We are therefore transmitting to you
this file pursuant to the provisions of Sec-
tion 13 of the Laws of Texas Relating to
Building and Loan Associations, since we have
determined that subject association is conduct-
ing its business contrary to law, is failing to
comply with the law, its assets are less than
its liabilities - including all its capital
stock - and is conducting its business in an
unsafe and unauthorized manner. It is our
definite opinion that prompt steps should be
taken to bring about the revocation of this
association's right to do business and the ap-

pointment of a receiver thereof for the
purpose of winding up its affairs.'

"Mr. Kalppa now advises that at a conference
with Mr. Basset on May 25 he suggested that the Bank-
ing Commissioner should take two specific steps as
set out below:

"(1) Specifically request the Attorney
General to do those things w ieh will bring about
the revocation of the Association's right to do
business and the appointment of a receiver thereof
for the purpose of winding up its affairs.

"(2) Through an official act annul the As-
sociation's permit to do business in Texas.

"In view of the fact that these suggestions
embrace a procedure which has not been followed in
respect to prior situations of a comparable nature
we should like to receive your official opinion to
the effect that it is our duty in the premises to
do those things enumerated above.

"Heretofore, under advice of office Counsel,
we have presumed that the jurisdiction of the Commis-
sioner ceases upon the relation of a matter to the
Attorney General, which presumption has embraced the
thought that the office of the Attorney General after
analyzing all the facts would use its own discretion
as to the advisability of instituting legal proceed-
ings.  In other words, it has been our conviction
that it was our duty to relate a situation to the
Attorney General and to set out therein the basis of
our views for which reason the last sentence of the
paragraph in our letter of date December 7, 1943
quoted above expressed our definite opinion as to
what should be done, but perhaps the expression does
fall short of a request.

"As to the second reference we were of the opin-
ion at the time the letter of date mentioned was trans-
mitted to you that the annulling of the permit to do
business and revocation of the Association's charter
would require court action, our views in this respect
having been acqured from a reading of the Notes of
Decisions, under Article 881a-13, Vernon's Annotated

Texas Statutes, which reference is as follows:

"'Statute authorizing banking com-
missioner to annul certificate of author-
ity of building and loan association, with
provision fixing venue of "any action,"
held to authorize commissioner's annulment
of permit only by court action. Shaw v. Lone
Star Building & Loan Ass'n (Civ. App.) 40 S.
W. (2d) 968.'"

"On the subject of annulling the Association's
permit to do business it was our thought that we had
perhaps gone as far as our authority in the premises
permitted in our letter of date June 18, 1945, a copy
of which is enclosed. You will note that we specifi-
cally advised the Board of Directors of the Association
that 'the condition of the association is such that no
director, officer, employee or salesman should accept
any money from any source as payment on shares or
share accounts.'

"We trust, therefore, that you can favor us
with your opinion on the subject matter, since it
will be of value not only in the instant case, but
will provide direction to this office on situations
of a comparable nature which may arise in the future."

Title No. 24, Vernon's Annotated Civil Statutes, con-
tains the statutes applicable to and governing building and loan
associations in this State. Under the provisions of Article 881a-
7, Vernon's Annotated Civil Statutes, the Banking Commissioner is
given supervision and control over all building and loan associa-
tions doing business in this State.

Articles 881a-13 and 881a-14, Vernon's Annotated Civil
Statutes, are as follows:

Article 881a-13. "In case the Banking Commis-
sioner of Texas shall find, upon examination of from
other evidence, that any building and loan association
is conducting its business, in whole or in part, con-
trary to law, or failing to comply with the law, that
its assets are less than its liabilities, including all
its capital stock, or conducting its business in an un-
safe, unauthorized or fraudulent manner, the Banking
Commissioner of Texas shall, by an order in writing
addressed to the president of such association, direct

attention thereto and order compliance with the law, and that the assets be increased to equal liabilities, and in case such association shall refuse or neglect to comply with any such order lawfully made, or in any case any such association is insolvent or in danger of insolvency, or its assets are impaired, then the Banking Commissioner of Texas shall annul its certificate of authority and may begin an action to revoke the charter of such association and for the appointment of receiver thereof and the winding up of its affairs., Any action begun under this section shall be brought in the county where such association has its principal place of business and in the name of the State of Texas on relation of the Banking Commissioner of Texas, and shall be prosecuted by the Attorney General."

### Article 881a-14:

"Should the Banking Commissioner of Texas find, upon examination, that the affairs of any such association are in unsound condition and the interest of the public demand the dissolution of such association and the winding up of its business, it shall so report to the Attorney General who shall institute the proper proceedings for that purpose."

Article 881a-15, Vernon's Annotated Civil Statutes, makes a refusal of the association to permit an examination of its affairs a cause of action to wind up its affairs, forfeit its charter, and to liquidate the association.

Referring to Article 881a-16, Vernon's Annotated Civil Statutes, it is said in the case of Lone Star Building and Loan Association v. State, 153 S. W. (2d) 219:

"Section 16 declares that the 'rights and remedies given by the two preceding sections are cumulative of each other, but that no involuntary liquidation of any association shall be accomplished except as above provided ; that is to say, at the suit of the Attorney General on information and request of the Banking Commissioner of Texas.' It further provides that if the court determines that the association's affairs should be liquidated and it is so ordered, then the Banking Commissioner shall forthwith take possession of such association, its assets and affairs, collect

its claims, pay its debts and obligations, and dis-
tribute its assets to those lawfully entitled thereto-
finally reporting its action to the court for approval.
* * *.

Certain building and loan associations have raised the
question that the Attorney General has no authority to bring a suit
under Title 24, supra, unless specifically requested by the Banking
Commissioner. After carefully considering Article 881a-14, supra,
and the case of Lone Star Building & Loan Ass'n., v. State, supra,
it is our opinion that the Banking Commissioner should specifically
request the Attorney General to file suit to forfeit the charter of
a building and loan association which is insolvent or is conducting
its business, in whole or in part, contrary to law, or failing to
comply with the law, etc. Stated another way, it is our opinion
that the Banking Commissioner should specifically request the Attor
ney General to do those things which will bring about the cancella-
tion of the association's charter and if necessary the appointment
of a receiver thereof for the purpose of winding up its affairs.

We now consider the second matter mentioned in your in-
quiry., We note that with reference to your second proposition you
cite the case of Shaw v. Lone Star Building & Loan Association, 40
S. W. (2d) 968, holding, among other things, that the Banking Com-
missioner has authority to annul a permit only by court action. Th
This case has been reversed by the Commission of Appeals of Texas
in the case of Shaw v. Lone Star Building & Loan Association, 71
S. W. (2d) 863. It is stated in this case:

"It is held by the Court of Civil Appeals in
Section 13 of the 1929 Act should not be given the
construction that it authorize the Banking Commis-
sioner to annul a permit to do business in this State
without a court action, because such a construction
would render the act unconstitutional as in violation
of Section 19 of Article I, and Section 4 of Article
V of our State Constitution. We think this holding
is error for two reasons, first, because the very word-
ing of the Act will permit of no other construction,
and, second, because such construction does not render
the Act violative of either of the above constitutional
provisions."

In the case of Woods v. Wichita Falls Building & Loan
Association, 96 S. W. (2d) 64, the Supreme Court said:

"* * * Articles 867 and 881a-15, supra, in effect make it the exclusive primary duty of the Banking Commissioner to determine the question of insolvency, and, if he determines that an association is insolvent, and fails after notice to make itself solvent, it is his duty to annul the permit to do business. Also the Banking Commissioner is given certain other duties in the statutes defined, which are intended to prevent the operation of an insolvent association in this State. * * *"

(Also see the case of Shaw v. Hinton, et al, 51 S. W. (2d) 476).

In view of the foregoing authorities you are respectfully advised that it is the opinion of this department that when a building and loan association is engaged in an illegal, unauthorized, unsafe, fraudulent practice, and is insolvent or conducting its business, in wholw or in part, contrary to the law, or failing to comply with the law, the Banking Commissioner shall by an order in writing addressed to the president of such association, direct attention thereto and order compliance with the law, and that the assets be increased to equal liabilities, if the liabilities are greater than the assets, and in case such association refuses and neglects to comply with any such order lawfully made, or in case any such association is insolvent or in danger of insolvency, or assets are impaired, then the Banking Commissioner of Texas shall annul its certificate of authority. The annulment of a certificate of authority of a building and loan association is not to be confused with the forfeiture or cancellation of a charter or the cancellation of a permit to do business in this State by a foreign corporation or association.

Yours very truly

ATTORNEY GENERAL OF TEXAS

Approved June 7, 1944
Grover Sellers
Attorney General of Texas

By    (s)  Ardell Williams
                Assistant

Approved: Opinion Committee by
        B. W. B., Chairman

aW:ep:lw